In the Matter of EDWARD J. GANTLY, an Attorney, Respondent.

First Department, June 2, 1939.

*F. Campbell Jeffery* of counsel [*Einar Chrystie*, attorney], for the petitioner.

No appearance for the respondent.

PER CURIAM. In May, 1935, the respondent was retained by Constantin Pintchuk and his wife to institute a personal injury action. The case was settled for one hundred and twenty-five dollars. A check for that amount dated January 13, 1936, was delivered to the respondent, payable to him and his two clients. He indorsed the names of his clients upon the check without their knowledge or consent and deposited it in his account in the West Bergen Trust Company, Jersey City. On February 14, 1936, he mailed to his clients a check dated February 24, 1936, upon the Lawyers Trust Company for sixty-two dollars, representing the amount to which they were entitled after deducting his fees and fees for

services rendered by him in their behalf in another matter. The check was not paid because of improper signature. His clients have never received the amount due them.

The respondent claimed that upon being informed by the bank that the check had been returned to the payees because of an unsatisfactory signature, he gave to one Walter Fanke, a mutual friend of himself and his clients, sixty-two dollars in cash to be delivered to them. He did not ask Mr. Fanke to obtain a receipt or release from his clients, nor did he subsequently ask him whether he had given them the money but merely assumed that the matter had been disposed of by payment. This explanation evidently was untrue and served merely to aggravate the respondent's misconduct.

On June 12, 1936, Ernst Brenner and Simon Weisberger conferred with the respondent respecting the purchase of a restaurant at 111 Lafayette street, New York city. He represented that the place was owned by a corporation known as Jack & Eddie's, Inc., and that he was the proper person to negotiate a sale. He subsequently purported to consummate a sale of the premises on behalf of said corporation for the sum of $5,000, signing his name to the contract of sale as vice-president of the corporation and receiving a deposit of $500. He thereafter notified Mr. Brenner that the corporation had refused to ratify the sale of the business and that he was making arrangements to return the deposit. No part thereof was returned. The entire amount was converted by respondent. He was not in fact an officer of the corporation and had no interest therein.

The respondent upon the hearing testified that an informal meeting of the corporate officers was had around the bar of the hotel, at which he was elected vice-president. He further testified that of the $500 received he gave $400 to a Mrs. Grant, the widow of one who he claimed had the controlling interest in the corporation, because she informed him there were certain bills to be paid, and that he retained the balance for services alleged to have been rendered by him to the corporation. This fantastic explanation finds no corroboration in the record and rests entirely upon the respondent's word. No corporate records were produced or any testimony by the persons alleged to have participated in the transactions.

The respondent should be disbarred.

Present — MARTIN, P. J., O'MALLEY, GLENNON, UNTERMYER and DORE, JJ.

Respondent disbarred.